# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re | |
| **BIG SPRINGS REALTY LLC**, | Case No. **09-61079-7** |
| Debtor. | |
| | |
| **DARCY M. CRUM**, | |
| Plaintiff. | |
| -vs- | Adv No. **09-00065** |
| **TIMOTHY L BLIXSETH**, | |
| Defendant. | |

## *MEMORANDUM of DECISION*

At Butte in said District this 11th day of January, 2010.

In this Adversary Proceeding, after due notice, a hearing was held January 5, 2010, in Butte on the Plaintiff's Motion for Sanctions filed November 20, 2009, at docket entry no. 47; and Plaintiff's Request for a Ruling filed December 23, 2009, at docket entry no. 103. Robert K. Baldwin and Trent M. Gardner of Bozeman, Montana appeared at the hearing on behalf of the Plaintiff, and Daniel D. Manson of Butte, Montana and Philip H. Stillman of Encinitas, California appeared on behalf of the Defendant. At the hearing, the Court heard argument from counsel, but no witness testimony or exhibits were offered.

Plaintiff's Request for a Ruling filed December 23, 2009, relates to the Plaintiff's Motion

1

Created by Neevia Document Converter trial version http://www.neevia.com

for Determination of Core Proceeding filed November 24, 2009.  Plaintiff's Motion for

Determination of Core Proceeding and Motion for Temporary Restraining Order and Preliminary

Injunction are under advisement and will be addressed by separate order.  Plaintiff's Request for

a Ruling is, therefore, deemed under advisement and will be addressed in the separate order on

the Motion for Determination of Core Proceeding and Motion for Temporary Restraining Order

and Preliminary Injunction.

At the hearing held January 5, 2010, this Court granted Plaintiff's Motion for Sanctions.

This Order expounds upon, clarifies and memorializes the Court's oral ruling.  In a vacuum, the

Court's imposition of sanctions against Blixseth may seem harsh.  However, the Court's ruling

was not made in a vacuum but rather, includes a plethora of information and facts that the Court

has learned not only from this Adversary Proceeding, but also from other various related cases

over which I have presided.[1]  A little background perhaps puts the Court's ruling in perspective.

BACKGROUND

The Defendant in this Adversary Proceeding, Timothy L. Blixseth ("Blixseth") and his

former spouse, Edra Blixseth ("Edra"), were the founders of Yellowstone Mountain Club, LLC,

Yellowstone Development, LLC, Big Sky Ridge, LLC, and Yellowstone Club Construction

Company, LLC, which limited liability companies are referred to generally by this Court as the

---

[1]  Rule 9017, F.R.B.P., provides that the Federal Rules of Evidence apply in cases under the Bankruptcy Code.  It is a commonly-accepted practice to take "judicial notice" of a court's records.  *See* 3 J. Weinstein & M. Berger, WEINSTEIN'S EVIDENCE ¶¶ 201 [03] at 201-35 to -40 (1992).  The practice is particularly useful in bankruptcy litigation in which individual adversary proceedings and contested matters, each of which is procedurally distinct and has its own record, all occur within, and are affected by, the context of the parent bankruptcy case.  *See id.*  For the reason just discussed, this Court concludes that it may take judicial notice of the proceedings in related bankruptcy cases and adversary proceedings for the purpose of providing additional background regarding the nature of the dispute and the relationship of the parties.

Created by Neevia Document Converter trial version http://www.neevia.com

Yellowstone Club entities.  Blixseth and Edra were also the founders of Yellowstone Club World, LLC, Big Springs Realty, LLC and BLX Group, Inc., f/k/a Blixseth Group, Inc. or BGI. Blixseth was in control of all the aforementioned entities until August of 2008, when Blixseth turned ownership and control of said entities over to Edra pursuant to the couple's marital settlement agreement.  Shortly thereafter, on November 10, 2008, Edra caused the Yellowstone Club entities to seek protection under Chapter 11 of the Bankruptcy Code.[2]  In addition, an involuntary bankruptcy petition was filed against Yellowstone Club World, LLC on January 25, 2009,[3] Big Springs Realty, LLC filed a voluntary Chapter 7 bankruptcy petition on June 5, 2009,[4] and an involuntary Chapter 11 bankruptcy petition was filed against BLX Group, Inc. on September 21, 2009.[5]  Finally, Edra personally sought protection under Chapter 11 of the Bankruptcy Code on March 26, 2009.  Edra's bankruptcy case was converted to Chapter 7 of the Bankruptcy Code on May 29, 2009.[6]

        During several debtor-in-possession financing hearings in the Yellowstone Club entity

_____

        [2]  The Yellowstone Club entities have generated 7 separate adversary proceedings, two of which were consolidated.  Blixseth is involved in the consolidated adversary proceeding as well as one additional adversary proceeding.

        [3]  Blixseth is named as a defendant in one of the two adversary proceedings associated with the Yellowstone Club World bankruptcy.

        [4]  Blixseth is the only named defendant in the one adversary proceeding associated with the Big Springs Realty, LLC bankruptcy.

        [5]  Blixseth is not a party to either of the adversary proceedings associated with the BLX Group, Inc. bankruptcy.

        [6]  To date, Edra's bankruptcy case has generated 9 adversary proceedings, 6 of which are still open.  Blixseth, as Plaintiff, commenced one of those adversary proceedings and Blixseth's counsel, Michael J. Flynn, as Plaintiff, commenced another.

Created by Neevia Document Converter trial version http://www.neevia.com

bankruptcies, many of which were attended by Blixseth's counsel, certain parties discussed a $375 million loan that the Yellowstone Club entities obtained from Credit Suisse and Blixseth's use of the loan proceeds, including the notes that Blixseth, on behalf of then BGI, executed in favor of the Yellowstone Club entities when Blixseth removed a substantial amount of the Credit Suisse loan proceeds from the Yellowstone Club entities. Those discussions eventually prompted the Court to schedule a show cause hearing on January 13, 2009, for parties in interest to appear and show cause why the Court should not lift the automatic stay to allow enforcement of the three Promissory Notes between the Debtors and the now BLX Group, Inc. in the approximate stated amount of $275,000,000. Following the January 13, 2009, hearing, the Court entered an Order on January 16, 2009, lifting the automatic stay to allow "[the Official Committee of Unsecured Creditors], as fiduciary of the bankruptcy estate, [to] conduct a full review of the causes of action belonging to [the Yellowstone Club entities] that are related to the Promissory Notes to determine how [the Yellowstone Club entities'] bankruptcy estates should best proceed to recover the divested proceeds of the Credit Suisse loan[.]"

Under the umbrella of the Yellowstone Club entities' bankruptcies, the unsecured creditors' committee, on February 11, 2009, filed a combined "Notice of Claim Against Credit Suisse, Objection to Claim of Credit Suisse, and Motion for Authorization to File Complaint Against Credit Suisse." Blixseth's counsel received notice of the unsecured creditors' committee's February 11, 2009, combined pleading, including the proposed complaint attached thereto. In anticipation of the committee's complaint and as a protective measure, Credit Suisse filed a complaint against the Yellowstone Club entities and the unsecured creditors' committee on February 25, 2009, thereby commencing Adversary Proceeding 09-00014. Credit Suisse's

4

complaint was accompanied by a Motion to Expedite Proceedings and Set an Immediate Scheduling Conference.

The unsecured creditors' committee then filed its own complaint against Credit Suisse and John Does 1-15 on March 3, 2009, thereby commencing Adversary Proceeding 09-00017. Adversary Proceeding 09-00014 and Adversary Proceeding 09-00017 were consolidated by the Court on March 3, 2009.  Blixseth's counsel, along with the other attorneys involved in the Yellowstone Club entities' bankruptcies, including counsel for the Yellowstone Club entities, the unsecured creditors' committee and Credit Suisse, appeared at a hearing held March 4, 2009.  At the March 4, 2009, hearing, counsel for the Yellowstone Club entities, the unsecured creditors' committee and Credit Suisse discussed the need for an expedited trial in the consolidated Adversary Proceedings.  At the conclusion of the March 4, 2009, hearing, the Court directed the parties to submit a proposed scheduling order.  On March 11, 2009, the Yellowstone Club entities, the unsecured creditors' committee and Credit Suisse filed a Stipulated Scheduling Order, which the Court adopted as the Scheduling Order governing consolidated adversary proceedings 09-14 and 09-17.  The Scheduling Order set April 22, 2009, as the date for commencement of trial.

On March 16, 2009, Blixseth filed a Motion to File Complaint in Intervention which reads in part:

> By this action, Mr. Blixseth seeks an expedited declaratory judgment confirming that the Loan Transaction does not constitute a fraudulent transfer as alleged by the Committee. Mr. Blixseth also seeks a declaration that any claims regarding Mr. Blixseth's fiduciary duties to the Yellowstone Club are time-barred. In the alternative, Mr. Blixseth seeks a declaratory judgment confirming he did not breach any fiduciary duty to the Club by entering into and performing obligations under the Loan Agreement and that he did not have a fiduciary duty to

5

Created by Neevia Document Converter trial version http://www.neevia.com

the Club's other creditors regarding the Loan Transaction.

Three days after Blixseth filed the Motion to File Complaint in Intervention, Blixseth filed a request for expedited hearing on the motion to intervene because it was "essential that Mr. Blixseth be allowed to intervene immediately to participate in discovery and pretrial proceedings." The Court granted Blixseth's request for expedited hearing.

At the expedited hearing held March 24, 2009, Joel Guthals of Billings, Montana appeared on behalf of Blixseth and argued that, under Fed.R.Civ.P. 24(a)(2), applicable under Bankruptcy Rule 7024, "the Court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Mr. Guthals explained that the committee's complaint contained at least 15 allegations that directly mentioned Blixseth and included two claims directly against Blixseth.  Given the absence of any opposition, the Court granted Blixseth's motion to intervene.  While the Court advised Mr. Guthals that it would entertain requests to extend discovery and other such deadlines, the Court made it very clear to Mr. Guthals that trial would commence on April 22, 2009, as scheduled, and that Blixseth would not be permitted to delay the proceedings.

Mr. Guthals promptly filed Blixseth's complaint in intervention on March 24, 2009, and on March 25, 2009, Blixseth filed a request for shortened time for the other parties-in-interest to respond to his complaint in intervention, which the Court granted.  However, despite the Court's prior directive to Blixseth and his counsel that they be ready for trial on April 22, 2009, Blixseth filed a Motion to Amend Scheduling Order and Continue Trial Date on March 26, 2009, arguing

Created by Neevia Document Converter trial version http://www.neevia.com

in part:

> 11. On behalf of Mr. Blixseth, the undersigned requests that the present trial date be continued to a date and time convenient to the Court and counsel, but not earlier than May 11, 2009 and that the pretrial deadlines be adjusted and the time for parties to respond to discovery requests be shortened, all to allow Mr. Blixseth to have a fair opportunity in the trial of this consolidated adversary proceeding.

> 12. Mr. Blixseth and his lawyers appreciate the Court's need to promptly decide the issues in this case, prior to confirmation of the Chapter 11 Plan, and are willing and able to handle this litigation in an expeditious fashion, as they have so far demonstrated.

Following a hearing held March 27, 2009, the Court entered an Order denying Blixseth's motion

for continuance, explaining:

> The Court has tentatively scheduled May 18, 2009, as the date for the hearing on confirmation of the Debtors' Chapter 11 Plan. This Court scheduled May 18, 2009, as the confirmation hearing date because the Court has other commitments between May 20, 2009, and June 9, 2009. A continuance of the April 22, 2009, trial in this proceeding would necessarily result in the confirmation hearing on the Debtors' Chapter 11 Plan being continued to the latter part of June. The issues in this proceeding need to be resolved prior to the hearing on confirmation of Debtors' Chapter 11 Plan and from what the parties have conveyed to the Court, the hearing on confirmation of Debtors' Chapter 11 Plan must be held prior to [June 10, 2009, because Debtors' DIP financing expires in May of 2009]. Thus, Blixseth's request for a continuance must be denied.

Prior to trial in consolidated adversary proceedings 09-14 and 09-17, the Yellowstone

Club entities filed a motion seeking to compel Blixseth's appearance at a previously scheduled

deposition.  In an Order entered April 16, 2009, the Court explained:

> An expedited emergency hearing on the Debtors' April 13, 2009, motion was held April 14, 2009, at 4:00 p.m., which hearing was continued to 1:00 p.m. on April 15, 2009. At the conclusion of the discovery dispute hearing on April 15, 2009, the Court orally granted the Debtors' motion to compel and ordered that discovery and depositions would go forward as scheduled. The Court has not yet had an opportunity to issue a written order on that matter.

> According to counsel at the hearing on the now pending discovery matter,

Created by Neevia Document Converter trial version http://www.neevia.com

Debtors' counsel was advised this morning at approximately 8:00 a.m. that they could review the requested discovery documents at their present location, but Debtors' counsel could not remove the documents to a secure facility for scanning and copying. Debtors' counsel argued that it was simply too cumbersome to try and review five boxes of documents at their present location. That matter resolved itself at approximately 11:00 a.m. when Blixseth and/or his counsel agreed to comply with the Debtors' request for document production by allowing the Debtors to remove the documents to a secure location for scanning and copying. However, Debtors' counsel was then advised by the copy service that the documents would not be scanned and ready until 9:00 a.m. on Friday, April 17, 2009. The Debtors are scheduled to take Michael Doyle's deposition on April 17, 2009, and now argue that they need to review the requested documents, which will not be ready for review until 9:00 a.m. on April 17th, prior to taking Michael Doyle's deposition.

As a consequence, Debtors request that the April 17th deposition of Michael Doyle be moved to Monday, April 20, 2009.  Counsel for Blixseth opposes such request arguing that they are prepared to proceed with the deposition of Michael Doyle in Butte on Friday, April 17, 2009.  As a compromise, counsel for Blixseth agreed to continue the deposition to either April 18th or 19th. Counsel for the Debtors countered that they were scheduled to travel on April 19, 2009, and were adamant that April 20, 2009, was the only possible date for the deposition.

It appears to this Court that personality disputes between counsel for the Debtors and Blixseth preclude the parties from reaching mutually agreeable resolutions to their disputes.  Given the willingness to compromise by Blixseth's counsel, the Court was initially inclined to agree with counsel for Blixseth, and reschedule the deposition of Michael Doyle for either April 18th or April 19th.  However, the present dispute could have been avoided if Blixseth would have promptly complied with the Debtors' request for production of documents.

The Court thus continued the deposition of Blixseth's witness, Michael Boyle, to April 20, 2009.

In a subsequent Order, the Court granted the motion to compel Blixseth's appearance at his deposition.

Having failed to delay the consolidated adversary proceedings and in an apparent response to the motion to compel, Blixseth filed an emergency motion to dismiss the unsecured creditors' claims against Blixseth, which Motion was filed by Blixseth on April 14, 2009.  In said

8

Created by Neevia Document Converter trial version http://www.neevia.com

emergency motion, Blixseth claimed that the unsecured creditors committee had violated Blixseth's attorney-client relationship and gained confidential attorney-client information from attorney Stephen R. Brown on matters that were the subject of the litigation in the consolidated adversary proceedings. Blixseth argued ad nauseam that he had been damaged by Stephen R. Brown's alleged divulgence of information that was protected by Blixseth's attorney-client privilege.

Blixseth's counsel also took every opportunity to complain that Blixseth was denied due process because of his inability to properly prepare for trial given the speed with which that matter went to trial. For example, on the eve of trial, Blixseth's counsel filed an expedited motion to bifurcate trial of claims regarding Blixseth arguing that Blixseth had not had an opportunity to conduct and complete adequate discovery and trial preparation. In response to that argument, the Court wrote:

> The Committee and the Debtors oppose Blixseth's motion for bifurcation arguing that this case has been a monumental undertaking for every party, not just Blixseth. Once Blixseth asked to be a part of this case, the parties worked with Blixseth–including delaying Blixseth's deposition while he was on his honeymoon–and now Blixseth is an integral part of this proceeding. Credit Suisse similarly opposes Blixseth's request arguing that Credit Suisse could potentially be collaterally estopped from proceeding with its claims against Blixseth.
>
> The Court agrees with the positions of the Committee, Debtors and Credit Suisse regarding bifurcation. Particularly as Blixseth's counsel filed a notice of appearance on November 24, 2008. Moreover, Blixseth's counsel received notice of the Committee's proposed complaint as early as February 11, 2009, and while Blixseth is not specifically named as a defendant in said complaint, as Blixseth's counsel argues, it's quite apparent from a reading of the complaint that Blixseth is one of the John Does. Blixseth's request for bifurcation would put this entire proceeding into a tailspin at this juncture, resulting in a vicious circle of piecemeal litigation.

Blixseth next complained on April 22, 2009, the date trial was scheduled to commence,

9

Created by Neevia Document Converter trial version http://www.neevia.com

that the other parties in that matter had not formally produced all their exhibits for Blixseth.

After considering Blixseth's numerous grievances, the Court reluctantly delayed the trial in that

matter for a period of one week, explaining:

> [T]he Court is troubled by the parties' lackadaisical attitude toward producing
> their exhibits to each other. While the Committee did not have a great deal of
> documents to produce in this case, the Committee . . . established an FTP server
> where all the parties could deposit all documents relevant to this case. That server
> contains thousands and thousands of pages of documents. Because all the parties,
> including Blixseth, had access to the FTP server, the parties failed to produce their
> exhibits to each other under the time set forth in the Scheduling Order, as
> amended on April 16, 2009. To be specific, even though exhibits were to be
> provided to opposing parties on April 20, 2009, Blixseth did not receive some
> exhibits until 11:00 p.m. on the eve of trial. Moreover, as of 09:00 a.m. on the day
> of trial, this Court did not yet have a pretrial order from the parties. The Court
> will not allow this case to go forward if it would deny a party its Constitutional
> right to fundamental due process.
>
> Blixseth now has copies of the Debtors' Exhibits, the Committee's Exhibits
> and Credit Suisse's Exhibits. Because bifurcation is not a viable option, the
> Court's only alternative is to delay the trial to afford Blixseth time to review and
> digest the exhibits from other parties.

Blixseth's counsel also argued on a regular basis that Blixseth was being denied due

process because the unsecured creditors' committee, the Debtors and Credit Suisse had a full

month more to prepare for trial because Adversary Proceeding 09-14 was commenced on

February 25, 2009, yet Blixseth did not file his motion to intervene until March 16, 2009.  The

evidence showed otherwise.  The parties all agreed that Blixseth was originally named as a

defendant in the committee's complaint and in fact, on or about February 7, 2009, the

committee's counsel contacted Blixseth's counsel, Michael Flynn, as a courtesy, prior to the date

that the Committee filed its Complaint, to apprise Blixseth that he was going to be named as a

defendant. About this same time, Blixseth was making noise that he was going to propose to pay

10

Created by Neevia Document Converter trial version http://www.neevia.com

many of the unsecured creditors in full.  Whether for that reason or another unstated reason, Blixseth was ultimately excluded from the committee's complaint as a named defendant.

Still, as Blixseth's counsel explained, the complaint in that action contained numerous references to Blixseth.  Thus, Blixseth felt compelled to intervene.  While Blixseth was not granted leave to officially intervene until March 24, 2009, Blixseth knew the Committee had its sights on him as early as February 7, 2009.  Accordingly, Blixseth had just as much time as the other parties to prepare for trial, yet Blixseth continued to complain that he was being denied due process under the deadlines and trial date set forth in the stipulated scheduling order. Notwithstanding all the above, the Court was cognizant of how fast the matter went to trial, and thus, following the trial in late April and early May of 2009, the Court kept the record open for Blixseth's benefit, and trial in that matter is set to reconvene on February 24, 2010.

As for other proceedings, the Chapter 7 Trustee in the Yellowstone Club World, LLC bankruptcy filed a complaint against Blixseth on October 20, 2009.  The plaintiff/trustee in that adversary proceeding has been attempting to secure responses to discovery requests and requests for production from Blixseth since October 23, 2009.  Those attempts resulted in the plaintiff/trustee filing a motion to compel on December 20, 2009, and a hearing on that matter was also held January 5, 2010, in Butte.  At the conclusion of that hearing, the Court orally granted the motion to compel and directed that Blixseth immediately provide the plaintiff/trustee with a CD that allegedly contained 1,500 documents and also directed that Blixseth produce his Rule 30(b)(6) witness or witnesses for deposition the week of January 25, 2010.

Finally, the Court has this Adversary Proceeding that was commenced on September 3, 2009.  Concerned about the possible transfer and disappearance of assets, the Plaintiff filed on

Created by Neevia Document Converter trial version http://www.neevia.com

October 14, 2009, a Motion for Court Ordered Examination.  Following a hearing held October

22, 2009, the Court entered an Order on November 2, 2009, granting the Plaintiff's Motion and

directing that "Blixseth shall appear on or before November 10, 2009, to be examined by Crum

and her counsel under oath respecting his assets for purposes of prejudgment attachment, and if

Blixseth does not appear for examination under oath by November 10, 2009, Crum shall

immediately file a report to the Court and the Court will then set a date, time and place for such

examination of Blixseth."  On November 9, 2009, the Plaintiff filed a Status Report and Request

for Court Ordered Examination wherein the Plaintiff requested that the Court set the date for an

examination of Blixseth because as of November 9, 2009, Blixseth had not offered a single date

on which he would be available for an examination and in fact, Blixseth's counsel advised the

Plaintiff on November 9, 2009, that Blixseth was out of the country until the end of November

and would not be available for an examination until December 1, 2009, in Palm Springs,

California.

   In response to the Plaintiff's Status Report to the Court and Request for Court Ordered

Examination, and given the exigencies of this case, the Court entered an Order on November 10,

2009, directing that Blixseth "appear at Fisher Court Reporting, 503 East Mendenhall, Bozeman,

Montana on Friday, November 20, 2009, at 8:00 a.m. for the examination ordered in this Court's

Order dated November 2, 2009."

   On November 13, 2009, Blixseth, through counsel, filed a Motion for Reconsideration of

Date and Time for Court Ordered Examination or in the alternative, for a Protective Order

Pursuant to Fed.R.Bankr.P. 7026(c)(1)(B) Continuing Examination for at Least Three Court

Days and Request for Expedited Consideration.  The foregoing pleading was accompanied by a

Created by Neevia Document Converter trial version http://www.neevia.com

10-day notice provision and was docketed accordingly.  Because of the 10-day notice attached to the motion and because of the manner is which the motion was docketed, the matter was not brought before the Court for consideration until November 27, 2009.[7]

On November 17, 2009, prior to Blixseth's November 20, 2009, Court ordered examination, the Plaintiff filed a Motion to Compel representing that Blixseth had not provided a single response to the Plaintiff's September 18, 2009, written discovery and requests for production.  Blixseth responded to the Plaintiff's Motion to Compel on November 19, 2009, with a Motion to Withdraw the Reference from the Bankruptcy Court.  The withdrawal of reference matter is currently pending before the United States District Court for the District of Montana.

The next matter filed in this case was the pending Motion for Sanctions filed November 20, 2009, wherein the Plaintiff seeks sanctions against Blixseth and his counsel for Blixseth's failure to sit for the Court ordered November 20, 2009, examination regarding his assets and for Blixseth's violation of the applicable Rules regarding discovery.  On that same date, the Plaintiff also filed the previously mentioned Motion for Temporary Restraining Order and Preliminary Injunction seeking an order that would prevent Blixseth from transferring, encumbering, conveying, or disposing of any assets whatsoever until further Order of this Court.  After reviewing the Plaintiff's request for expedited consideration, an expedited hearing on the Motion for Temporary Restraining Order and Preliminary was set for December 4, 2009.  Blixseth responded with a expedited Motion to Reschedule Friday, December 4, 2009, Hearing to

---

[7]  The Court would note that when Blixseth wanted an expedited hearing or ruling in the past, he has filed and docketed such pleadings without the 10-day notice provision, which causes the matter to come before the undersigned immediately.  For reasons unknown to this Court, Blixseth and his counsel did not employ that procedure when they filed their combined pleading on November 13, 2009.

Created by Neevia Document Converter trial version http://www.neevia.com

Monday, December 7, 2009, due to a scheduling conflict.  This Court had a scheduling conflict

on December 7, 2009, and so the expedited hearing was held December 8, 2009.  The Motion for

Temporary Restraining Order and Preliminary Injunction was taken under advisement at the

December 9, 2009, hearing.

Following the December 8, 2009, hearing, Blixseth and his counsel finally made

themselves available for the Court ordered examination that was previously scheduled for

November 20, 2009.  However, Plaintiff's counsel was only permitted to examine Blixseth for

approximately 2 hours because Blixseth and his counsel had to catch a plane.  In addition,

Plaintiff's counsel was forced to proceed with the Court ordered examination without the benefit

of Blixseth's responses to written discovery and without any of the documents requested by the

Plaintiff because much of that information was not produced by Blixseth until December 30,

2009.  The Plaintiff thus filed another Motion to Compel Responses to Discovery on December

23, 2009.  Plaintiff's counsel noted at the January 5, 2010, hearing that while he did receive some

discovery responses on December 30, 2009, he still has not received any type of balance sheet of

financial statement from Blixseth.  Counsel for Blixseth countered that Blixseth, who is

supposedly worth millions of dollars, has no financial statements or written balance sheets.

Blixseth apparently is also unaware of the value of the assets he owns, including the book value

of various entities and their subsidiaries.  At the hearing, Plaintiff's counsel summarized that he

has been remarkably unsuccessful in obtaining any information from Blixseth.

As noted earlier, the Plaintiff also seeks sanctions against Blixseth for his failure to sit for

the Court ordered examination on November 20, 2009.  Blixseth and Mr. Stillman appeared for

the examination in Bozeman at the scheduled time and place, but left the examination shortly

14

Created by Neevia Document Converter trial version http://www.neevia.com

after it began stating that Mr. Stillman's health precluded him from going forward with the examination.  Blixseth's counsel apparently asked Plaintiff's counsel for a continuation of the examination, but Plaintiff and her counsel were not willing to continue the examination given the difficulty they had in getting Blixseth to appear for any examination.  Moreover, on the eve of the scheduled examination, Plaintiff's counsel was led to believe that Blixseth would be appearing at the examination with Mr. Stillman and his local counsel, Mr. Manson.  For reasons not explained to the Court, Mr. Manson did not attend the November 20,2009, examination.  In short, Blixseth opposes the Plaintiff's request for sanctions arguing that there "has been a short delay in these proceedings resulting from a serious health issue suffered by Defendant's lead counsel, Philip Stillman."

DISCUSSION

Fed. R. Civ. P. 37 applies in adversary proceedings under F.R.B.P. 7037.  If a party fails to obey an order to provide or permit discovery, including an order compelling discovery entered under Rule 37(a), Rule 37(b)(2) and (d) authorize the court in which the action is pending, in its discretion, to "make any orders in regard to the failure as are just, including "rendering a judgment by default against the disobedient party".  Rule 37(b)(2)(A); *Computer Task Group, Inc. v. Brotby*, 364 F.3d 1112, 1115 (9th Cir. 2004); *see also Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 353-54, 29 S.Ct. 370, 53 L.Ed. 530 (1909)  This Court in *In re Love*, 11 Mont. B.R. 490, 509-510 (Bankr. D. Mont. 1993), imposed sanctions for failure to respond to discovery after a court order, noting that in *Matter of Visioneering Const.*, 661 F.2d 119, 123-24 (9th Cir. 1981) a debtor's refusal to comply with discovery orders resulted in an entry of default.

In exercising its discretion, Rules 37(b) and (d) call upon a court to "make such orders in

15

Created by Neevia Document Converter trial version http://www.neevia.com

regard to the failure as are just and . . . justice requires that the most drastic sanctions be reserved for flagrant cases." Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §2284. The Ninth Circuit has written that "[w]here the drastic sanctions of dismissal or default are imposed, however, the range of discretion is narrowed and the losing party's noncompliance must be due to willfulness, fault, or bad faith." *Computer Task Group, Inc. v. Brotby*, 364 F.3d at 1115, *quoting Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9ᵗʰ Cir. 1997), *quoting Henry v. Gill Industries*, 983 F.2d 943, 946 (9ᵗʰ Cir. 1993). If a failure to make discovery is because of inability to comply rather than because of willfulness, bad faith, or any fault of the party, an action should not be dismissed nor a default judgment rendered, and less severe sanctions are the most that should be invoked. Wright, Miller & Marcus, FEDERAL PRACTICE AND PROCEDURE: Civil 2d §2284.

In deciding whether a sanction of dismissal or default for noncompliance with discovery is appropriate, the court must weigh five factors: " '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the [opposing party]; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions.' " *Computer Task Group, Inc. v. Brotby*, 364 F.3d at 1115, *quoting Payne v. Exxon Corp.*, 121 F.3d at 507, (quoting *Malone v. U.S. Postal Serv.*, 833 F.2d 128, 130 (9th Cir.1987), *cert. denied*, 488 U.S. 819, 109 S.Ct. 59, 102 L.Ed.2d 37 (1988)). "Where a court order is violated, the first and second factors will favor sanctions and the fourth will cut against them." *Computer Task Group, Inc. v. Brotby*, 364 F.3d at 1115, *quoting Payne v. Exxon Corp.*, 121 F.3d at 507 (*quoting Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1408 (9ᵗʰ Cir. 1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1019, 112 L.Ed.2d 1100 (1991).

Created by Neevia Document Converter trial version http://www.neevia.com

Blixseth has violated orders of this Court and thus, factors one and two favor severe sanctions. Blixseth argues that his responses to the Plaintiff's discovery requests were originally due October 22, 2009, and not October 19, 2009, because of the three day mail rule. However, Plaintiff granted Blixseth a two week extension of the response deadline, making the discovery responses due on November 5, 2009. Because Blixseth's lead counsel, Philip Stillman, was ill in early November, Blixseth requested yet another two week extension to file his discovery responses. Plaintiff's counsel would not agree to an additional two week extension, but did agree to a four day extension, making Blixseth's discovery responses due on or about November 9th or 10th. Plaintiff's counsel stated at the hearing, and Blixseth's counsel did not disagree, that Blixseth finally produced some of the requested discovery on December 30, 2009. Blixseth also filed a lengthy response to Plaintiff's Motion to Compel Responses to Discovery on January 7, 2010, and scheduled the continuing discovery dispute for hearing on February 11, 2010.

Addressing the third and fifth factors, although the Court concludes that it has the discretion to enter judgment against Blixseth, and that entry of a judgment would be warranted under the facts of this case based upon Blixseth's failure to respond to requests for production, failure to completely and accurately respond to Plaintiff's interrogatories, and failure to timely sit for a Court ordered examination, the Court finds that the risk of prejudice to the opposing parties and availability of less drastic sanctions, on balance, tip the scales against entry of a judgment at this time, but only if Blixseth ends his discovery tactics and only if Blixseth immediately brings himself into compliance with the Court's Order compelling him to provide complete responses to Plaintiff's discovery requests.

In the interests of justice, the Court will not at this time order entry of Judgment by

Created by Neevia Document Converter trial version http://www.neevia.com

Default against Blixseth, as it could in its discretion under Rule 37(b)(2)(C). *Computer Task Group, Inc. v. Brotby*, 364 F.3d at 1115. This could, however, be only a temporary respite if Blixseth continues to refuse to fully respond to other parties' discovery requests as provided under the applicable Rules of Procedure. Blixseth's failure to comply with this Court's Orders has resulted in imposition of sanctions below which, if Blixseth persists in his defiance, may result in this Court's imposition of more drastic sanctions under Rule 37(b)(2)(C), which may include a judgment by default, if these less drastic sanctions fail to bring about Blixseth's compliance.

The Court would note that while Blixseth is averse to appearing for depositions or producing requested discovery material, he is not timid about scheduling other people's depositions on shortened notice. He is also not above requesting the production of voluminous documentation on shortened notice. Just last week it came to the Court's attention that in adversary proceeding nos. 09-14 and 09-18, counsel for Blixseth served Joseph S. Harris on January 4, 2010, with a subpoena and a 45 paragraph document request requiring the production of a massive amount of documentation on or before January 8, 2010. Similarly, counsel for Blixseth delivered to CT Corporation on December 31, 2009, a subpoena and a 49 paragraph document request addressed to CrossHarbor Capital Partners, LLC, requiring the production of a massive amount of documentation on or before January 8, 2010.

Finally, Blixseth's counsel has demonstrated on prior occasion that they know how to bring matters before the Court on an expedited basis if necessary. In this case, Blixseth filed his November 13, 2009, Motion for Reconsideration of Date and Time for Court Ordered Examination or in the alternative, for a Protective Order Pursuant to Fed.R.Bankr.P.

Created by Neevia Document Converter trial version http://www.neevia.com

7026(c)(1)(B) Continuing Examination for at Least Three Court Days and Request for Expedited Consideration in such a fashion that caused it not to come to the Court's attention until well after the November 20, 2009, examination date. Mr. Stillman's effort to bring his illness before the Court is simply suspect. Blixseth's only other effort to seek the Court's authorization to continue the examination was, from what I understand, an attempt by Mr. Stillman to telephone my law clerk, Kelli, on the morning of the scheduled examination. My law clerk was on scheduled leave on November 20, 2009, and did not receive Mr. Stillman's voice mail until after Blixseth aborted the examination.

This Court seldom imposes sanctions and has never imposed a sanction where a medical condition was involved. However, given Blixseth's demonstrated desire to delay the proceedings in this Court through continual discovery disputes, on which this Court takes a dim view, I am left with no alternative but to impose sanctions at this juncture.

CONCLUSIONS OF LAW

1. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157, 1334 and 523.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

3. Plaintiff satisfied her burden of proof to show that Blixseth failed to comply with her first discovery requests and this Court's Order entered November 10, 2009, compelling Blixseth to appear for a Court ordered examination. Sanctions against Blixseth are thus appropriate under F.R.B.P. 7037 and Fed. R. Civ. P. 37(b)(2) and Rule 37(d).

4. The Court concludes in the exercise of its discretion under Rule 37(b)(2) that rendering judgment by default against Blixseth is not appropriate at this time because of the

19

Created by Neevia Document Converter trial version http://www.neevia.com

availability of lesser sanctions and lack of prejudice shown to the Plaintiff.

In accordance with the foregoing, the Court will enter a separate order providing as follows:

**IT IS ORDERED** that Plaintiff's Motion for Sanctions filed November 20, 2009, at docket entry no. 47, is GRANTED; Plaintiff's counsel shall have five days from the date of this Order to file an affidavit of the costs, attorneys fees, and expenses incurred as a result of Blixseth's violation of the discovery rules and Court Orders; and Blixseth shall have 5 days thereafter to respond to Plaintiff's affidavit.

**IT IS FURTHER ORDERED** that Blixseth shall have until Friday, January 15, 2010, to produce all documents that have been requested by the Plaintiff but which have not produced to date, including, but not limited to, a written list, made under penalty of perjury, of every single one of Blixseth's assets, listing each and every asset, whether owned by him directly or by any entity which he owns or controls, describing it fully (including legal descriptions, state of incorporation if it is an entity, vehicle identification or FAA registration numbers for aircraft, bank account numbers, etc.), as well as a statement of its value and a description of any security interest or debt against that property; and Blixseth shall make himself available to the Plaintiff for an additional examination in Montana sometime prior to January 31, 2010.

BY THE COURT

HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

20

Created by Neevia Document Converter trial version http://www.neevia.com

21

Created by Neevia Document Converter trial version http://www.neevia.com