## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re | |
| **BIG SPRINGS REALTY LLC**, | Case No. **09-61079-7** |
| Debtor. | |
| **DARCY M. CRUM**, | |
| Plaintiff. | |
| -vs- | Adv No. **09-00065** |
| **TIMOTHY L BLIXSETH**, | |
| Defendant. | |

## MEMORANDUM   OF   DECISION

At Butte in said District this 2nd day of February, 2010.

In this Adversary Proceeding, the Plaintiff filed a Motion for Determination of Core

Proceeding on November 24, 2009, at docket entry no. 56, requesting that this Court enter,

pursuant to 28 U.S.C. § 157(b)(3), an order that this Adversary Proceeding is a core proceeding.

This Adversary Proceeding was commenced on September 3, 2009, when the Plaintiff/Trustee

filed a Complaint against the Defendant, Timothy L. Blixseth ("Blixseth"), requesting that the

Court set aside and void certain distributions by the Debtor to Blixseth, that the Court enter

judgment against Blixseth for the amount of the distributions and for prejudgment interest, and

1

Created by Neevia Document Converter trial version http://www.neevia.com

that the Court award the Plaintiff/Trustee her attorney fees and costs to the extent allowed by applicable rule or law.  Blixseth filed an Answer to the Plaintiff/Trustee's Complaint on October 28, 2009.

BACKGROUND

Prior orders of this Court establish that Blixseth and his former spouse, Edra Blixseth ("Edra"), were the founders of Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Big Sky Ridge, LLC, and Yellowstone Club Construction Company, LLC, which limited liability companies are referred to generally by this Court as the Yellowstone Club entities. Blixseth and Edra were also the founders of Yellowstone Club World, LLC, Big Springs Realty, LLC and BLX Group, Inc., f/k/a Blixseth Group, Inc. or BGI.  The Debtor in this case, Big Springs Realty, LLC was allegedly the exclusive real estate broker for the Yellowstone Club entities.

Blixseth was in control of all the aforementioned entities until approximately August 13, 2008, when Blixseth turned ownership and control of said entities over to Edra pursuant to the couple's marital settlement agreement.  Shortly thereafter, on November 10, 2008, Edra caused the Yellowstone Club entities to seek protection under Chapter 11 of the Bankruptcy Code.  In addition, an involuntary bankruptcy petition was filed against Yellowstone Club World, LLC on January 25, 2009, Big Springs Realty, LLC filed a voluntary Chapter 7 bankruptcy petition on June 5, 2009, and an involuntary Chapter 11 bankruptcy petition was filed against BLX Group, Inc. on September 21, 2009.

Between June 6, 2007, and June 27, 2008, while Debtor was under the exclusive control of Blixseth, the Plaintiff/Trustee alleges that Blixseth transferred $5,868,159.39 from the Debtor

Created by Neevia Document Converter trial version http://www.neevia.com

to himself for the benefit of Blixseth or one of his various other entities.  The Plaintiff/Trustee

also argues that the Debtor did not receive any consideration for the transfers totaling

$5,868,159.39, that during the period of time between June 6, 2007, and June 27, 2008, Debtor's

remaining assets were unreasonably small, and that Blixseth should have reasonably believed

that the Debtor would not be able to pay its debts as they came due because Debtor was insolvent

or became insolvent as a result of the distributions.  Based on the above alleged facts, the

Plaintiff/Trustee maintains that under 11 U.S.C. § 544(b), Debtor's distributions to Blixseth were

fraudulent transfers under MONT. CODE ANN. §§ 31-2-333, and -334 (Montana's Uniform

Fraudulent Transfer Act) and 11 U.S.C. § 548, that such distributions constitute avoidable

preferential transfers under 11 U.S.C. § 547, that such distributions may be recovered pursuant to

11 U.S.C. § 550, and seeks a return of such distributions to the Debtor pursuant to MONT. CODE

ANN. § 35-8-604 (Montana's Limited Liability Company Act).

APPLICABLE LAW and DISCUSSION

This matter comes before the Court on the Plaintiff/Trustee's request for a determination

as to whether this Adversary Proceeding is a core proceeding as defined in 28 U.S.C. § 157(b)(2).

28 U.S.C. § 1334(b) confers upon federal district courts original but not exclusive jurisdiction

over "all civil proceedings arising under title 11, or arising in or related to cases under title 11."

Section 157(a) of Title 28 permits federal district courts to refer "any or all cases under title 11

and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to

bankruptcy courts.  The United States District Court for the District of Montana has made such a

reference by Standing Order 12.

"Bankruptcy judges may hear and determine all cases under title 11 and all core

3

Created by Neevia Document Converter trial version http://www.neevia.com

proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under [28 U.S.C. § 158]." 28 U.S.C. § 157(b)(1). "Core proceedings include, but are not limited to (A) matters concerning the administration of the estate . . . ; (F) proceedings to determine, avoid, or recover preferences . . . ; (H) proceedings to determine, avoid, or recover fraudulent conveyances . . .; (O) and other proceedings affecting the liquidation of the assets of the estate[.]" 28 U.S.C. § 157(b)(2).   This Court finds that the core proceedings referenced above as (F) and (H) are matters specifically alleged in Count I of the Plaintiff/Trustee's Complaint.

In addition to the plain language of the statute, the Plaintiff/Trustee relies on the case of *Duck v. Munn (In re Mankin)*, 823 F.2d 1296 (9th Cir. 1987), *cert. denied*, 485 U.S. 1006, 108 S.Ct. 1468, 99 L.Ed.2d 698 (1988), which held that § 157(b)(2)(H) confers core status on both federal fraudulent conveyance actions brought under 11 U.S.C. § 548 and fraudulent conveyance actions of state origin.  Blixseth, in his response filed December 4, 2009, agrees:

> Defendant acknowledges that under 28 U.S.C. §157(b), a proceeding need not be deemed a non-core proceeding solely on the basis that its resolution may be affected by state law. That concept, in the context of a fraudulent conveyance claim is addressed in the *Mankin* case cited by Plaintiff. *In re Mankin*, 823 F.2d 1296 (9th Cir. 1987). *Mankin* provides the following guidance:
>
> > [W]e have found no evidence that Congress intended to restrict §157(b)(2)(H) to federal fraudulent conveyance proceedings. Not only does §157(b)(2)(H) not distinguish between state and federal fraudulent conveyance proceedings, the federal law of fraudulent conveyance is **essentially identical** to the law of fraudulent conveyance adopted by the states.
>
> *Id.* at 1300 (emphasis added).

The Court goes on to state that:

Created by Neevia Document Converter trial version http://www.neevia.com

> Thus, for purposes of §157(b)(2)(H), **state fraudulent conveyance proceedings are distinguishable from federal fraudulent conveyance proceedings only by the fact that they are of state origin**. Congress has explicitly found that this is a distinction which, **standing alone**, cannot serve as a basis for distinguishing core from non-core proceedings. Thus, it appears that the weight of authority regarding state law fraudulent conveyance claims is to deem those claims core proceedings.

*Id.* at 1300-01 (emphasis added).

Rather than dispute the plain language of § 157(b)(2) and the ruling in *Mankin*, Blixseth argues that the Plaintiff/Trustee's application for a prejudgment writ of attachment "is purely a creature of state law and is not 'essentially identical' to any provision in the Bankruptcy Code for fraudulent conveyance claims."[1]  Blixseth's argument is misplaced.  "A prejudgment remedy is nothing more than a device a court uses to preserve its ability to ultimately fashion some sort of meaningful relief; it is not the reason for the lawsuit's existence or the court's initial jurisdiction."  *In re Teknek, LLC*, 343 B.R. 850, 866 (Bankr. N.D.Ill. 2006).  Count I of the Plaintiff/Trustee's Complaint, by Blixseth's own admission, is a core proceeding under 28 U.S.C. § 157(b)(2) and *In re Mankin*, 823 F.2d 1296.

Whether Count II of the Plaintiff/Trustee's Complaint is a core proceeding is less clear.  Congress specifically enacted § 157 in response to the Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).  In *Marathon*, the Supreme Court held, in a plurality opinion, that a bankruptcy court did not have jurisdiction to hear a pre-petition breach of contract claim that the debtor-in-possession had brought.  The *Marathon* holding was based primarily on the premise

---

[1]  The Plaintiff/Trustee filed an Application for Prejudgment Writ of Attachment on January 27, 2010.

Created by Neevia Document Converter trial version http://www.neevia.com

that granting the bankruptcy court such jurisdiction allowed a non-article III court to adjudicate claims based on state-created private rights arising independent from and antecedent to the bankruptcy proceedings, and involving individuals that would not otherwise be party to the bankruptcy proceeding.  *See Marathon*, 458 U.S. at 84, 102 S.Ct. 2858.  Congress subsequently established 28 U.S.C. § 157 to try to remedy the defects in the bankruptcy system noted in *Marathon*.

Subsequent to *Marathon* and enactment of § 157, the Ninth Circuit in *Security Farms v. International Brotherhood of Teamsters*, 124 F.3d 999, 1008 (9th Cir. 1997) (citing *In re Castlerock Properties ("Castlerock")*, 781 F.2d 159, 162 (9th Cir. 1986), explained that "[a]ctions that do not depend on bankruptcy laws for their existence and that could proceed in another court are considered 'non-core'."  Other Ninth Circuit authority notes that core proceedings are matters concerning administration of the estate and rights created by Title 11.  *In re International Nutronics, Inc.*, 28 F.3d 965, 969 (9th Cir. 1994), *cert. denied Robertson v. Isomedix, Inc.*, 513 U.S. 1016, 115 S.Ct 577, 130 L.Ed.2d 493 (1994).  Similarly, this Court has held:  "'If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding . . . .'  [*In re Eastport Assoc.*, 935 F.2d 1071, 1076 (9th Cir.1987)] (*quoting* [*In re Wood*, 825 F.2d 90, 97 (5th Cir.1987)])."  *In re Reinertson*, 224 B.R. 137, 147-48 (Bankr. D. Mont 1998) (*quoting In re ACI-HDT Supply Co.*, 205 B.R. 231, 237 (9th Cir. BAP 1997)).

The Ninth Circuit discussed factors to be considered in determining whether a proceeding is core or non-core in *Johnston Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 617 (9th Cir. 1993):

Created by Neevia Document Converter trial version http://www.neevia.com

> If a claim is not listed explicitly in § 157(b)(2) as a "core proceeding[ ]," we "consider[ ] factors such as whether the rights involved exist independent of title 11, depend on state law for their resolution, existed prior to the filing of a bankruptcy petition, or were significantly affected by the filing of the bankruptcy case." *Taxel v. Electronic Sports Research (In re Cinematronics, Inc.)*, 916 F.2d 1444, 1450 n. 5 (9th Cir.1990).  Determinations regarding the nature and extent of the bankruptcy estate are fundamental functions of the bankruptcy court and would be "core proceedings." *John Hancock Mutual Life Ins. Co. v. Watson (In re Kincaid)*, 917 F.2d 1162, 1165 (9th Cir.1990).

To characterize Count II of the Plaintiff/Trustee's Complaint as a core proceeding under the catchall provisions of § 157(b)(2)(A) and (O) raises a constitutional problem that this Court must avoid.  While Count II of the Plaintiff/Trustee's Complaint can be thought of as a proceeding "concerning the administration of the estate;" and concerning "the liquidation of the assets of the estate," the Court finds that this case is distinguishable from cases such as *Harris v. Wittman (In re Harris)*, 590 F.3d 730 (9th Cir. 2009), wherein the debtors filed suit against their bankruptcy trustee alleging breach of contract, breach of fiduciary duty, fraud, negligent misrepresentation, and constructive fraud.  The Ninth Circuit Court of Appeals in *Harris* concluded that the matter was a core proceeding because the action, that arose from the trustee's postpetition conduct in administering the assets of the estate, literally fell within § 157(b)(2)(A):

> Harris's claim does not just "relate" to the administration of the estate, his suit necessarily involves how the bankruptcy estate was administered. This is not like the pre-petition contract suits in *Castlerock* and *Marathon* that only arguably related to the administration of the estate because one of the parties to the contract was in bankruptcy. *See Marathon*, 458 U.S. at 90, 102 S.Ct. 2858 (Rehnquist, J., concurring in the judgment) ("The lawsuit is before the Bankruptcy Court only because the plaintiff has previously filed a petition for reorganization in that court."). Harris's breach of contract claim arose from the administration of his bankruptcy estate. *Castlerock*, like *Marathon*, involved breach of contract claims that arose before and independent of the administration of bankruptcy assets.

However, while Count II is not a core matter, it is "related to" the Debtor's bankruptcy

7

Created by Neevia Document Converter trial version http://www.neevia.com

proceeding because it involves a prepetition cause of action that belonged to the Debtor which became property of the bankruptcy estate.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995).  Because Count II is "related to" the Debtor's bankruptcy, as it is part of the estate, this Court has subject matter jurisdiction under 11 U.S.C. § 1334(b). *Vacation Village, Inc. v. Clark County, Nev*., 497 F.3d 902 (9th Cir. 2007).  However, because Count II is not a core proceeding, this Court may only submit "proposed findings of fact and conclusions of law" that are subject to de novo review by the district court. 28 U.S.C. § 157(c)(1).

Notwithstanding the foregoing, the Plaintiff/Trustee urges this Court to adopt the reasoning of *Taxel v. Electronic Sports Research (In re Cinematronics)*, 111 B.R. 892, 901 (Bankr. S.D.Cal. 1990), which concurred that "when a adversary proceeding is in part a core proceeding and part non-core, the bankruptcy court may find that the entire proceeding is core and that it has jurisdiction to hear and determine the entire proceeding where the core aspect of the case heavily predominates and the non-core aspect is insignificant."  Such reasoning is contrary to what this Court has done historically, *see e.g. Crum v. Tomlinson (In re Hettick)*, 413 B.R. 733 (Bankr. D.Mont. 2009), and this Court declines to depart from its prior practice.

The Court notes that Blixseth has not submitted a claim against the Debtor's bankruptcy estate, thereby bringing himself within the equitable jurisdiction of this Court.  As a consequence, under, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), it appears that Blixseth may have a viable demand for jury trial.  A party's right to a jury trial is grounded in the Seventh Amendment to the United States Constitution, which provides that "[i]n Suits at common law, where the value in controversy shall exceed

8

Created by Neevia Document Converter trial version http://www.neevia.com

twenty dollars, the right of a trial by jury shall be preserved...." U.S. CONST. amend. VII.  The

Seventh Amendment only preserves the right to a jury trial for suits at common law, not suits

based in equity.  To ascertain whether a party has a Seventh Amendment right to a jury trial, the

Supreme Court, in *Granfinanciera,* articulated a three-part test for determining whether claims

are legal or equitable: "First, we compare the statutory action to 18th-century actions brought in

the courts of England prior to the merger of the courts of law and equity.  Second, we examine

the remedy sought and determine whether it is legal or equitable in nature."  492 U.S. at 42, 109

S.Ct. 2782 (quoting *Tull v. United States,* 481 U.S. 412, 417-418, 107 S.Ct. 1831, 95 L.Ed.2d

365 (1987)).  However, the Supreme Court reiterated that "characterizing the relief sought is

'[m]ore important' than finding a precisely analogous common-law cause of action in

determining whether the Seventh Amendment guarantees a jury trial."  *Tull*, 481 U.S. at 421,

quoting *Curtis v. Loether*, 415 U.S. 189, 196, 94 S.Ct. 1005, 1009, 39 L.Ed.2d 260 (1974).

Finally, "if, on balance, [the] above two factors indicate that a party is entitled to a jury trial

under the Seventh Amendment, [a court] must [then] decide whether Congress may assign and

has assigned resolution of the relevant claim to a non-Article III adjudicative body that does not

use a jury as a factfinder."  *Granfinanciera,* 492 U.S. at 42.

 As for a party's Seventh Amendment right to a jury trial, the case of *Johnson v. Gardner*,

179 F.2d 114 (9th Cir. 1950), is instructive.  In *Johnson*, the bankrupt made various prepetition

transfers of real property to her daughter and three minor grandchildren.  The trustee in the

*Johnson* case initiated a fraudulent conveyance action against the bankrupt, her daughter and the

grandchildren asserting that the prepetition transfers "were without a fair consideration and were

intended to hinder, delay and defraud creditors, both present and future, as of the respective times

Created by Neevia Document Converter trial version http://www.neevia.com

of such conveyances." *Johnson*, 179 F.2d at 115.  The trustee thus requested, in part,  "that the

recorded deeds purporting to convey the real property in suit be ordered cancelled of record, and

the record title of such real property be vested in the trustee in bankruptcy for the estate of [the

bankrupt]." *Id.*  At the time of trial, the bankrupt requested a jury trial.  The bankruptcy court

concluded that the bankrupt had waived her right to a jury trial and proceeded with a bench trial.

On appeal, the Ninth Circuit affirmed the bankruptcy court's denial of a jury trial, stating:

> It is pellucidly clear from a consideration of the pleadings, findings,
> conclusions and the judgment in the record before us that the action in the District
> Court was entirely and essentially one of equitable cognizance. *Brainard v. Cohn*,
> 9 Cir., 1923, 8 F.2d 13. There was no demand for monetary relief except such as
> might be awarded against the bankrupt as a corollary to an accounting which is in
> an historic field of equity jurisprudence. *Kemp-Booth Co. v. Calvin*, 9 Cir., 1936,
> 84 F.2d 377.
>
> The gravamen of the suit and the crucial issue in it is the fraud that is
> alleged in the amended complaint to be the actuating means of the conveyances of
> the real property which the trustee seeks to recover for the bankrupt estate. Thus
> the wrong wrought by the fraud is not remediable at law in any efficient and
> practical way, and the historical equitable relief by cancellation of record is the
> only adequate and complete remedy.
>
> Under such a situation, while it is true that the fraud alleged in the
> amended complaint is a question of fact in the suit, it is not one which under the
> record the chancellor was required to call the jury to decide. *Hummel v. Wells
> Petroleum Co.*, 7 Cir., 1940, 111 F.2d 883; Cf. *Johnsen v. American-Hawaiian
> S.S. Co.*, 9 Cir., 1938, 98 F.2d 847, 852.

*Johnson*, 179 F.2d at 117.

After carefully reading *Granfinanciera*, 492 U.S. 33, this Court concludes that *Johnson* is

still good law and that *Granfinanciera* is distinguishable.  In *Granfinanciera,* the bankruptcy

trustee sued to recover an alleged fraudulent transfer of $1.7 million from the defendant, who

demanded a jury trial.  *Granfinanciera,* 492 U.S. at 36-37.  The trustee sought to avoid the

10

Created by Neevia Document Converter trial version http://www.neevia.com

transfer and recover damages, costs, expenses, and interest under 11 U.S.C. § 548(a)(1) and

(a)(2) and 11 U.S.C. § 550(a)(1).  *Id.* at 36.  In applying the first part of the test as to whether the

trustee's claims were legal or equitable, the Supreme Court concluded "that the respondent

would have had to bring his action to recover an alleged fraudulent conveyance of a determinate

sum of money at law in 18th-century England, and that a court of equity would not have

adjudicated it."  *Id.* at 45.  As to the second part, it held that the nature of the relief sought (i.e.

return of "money payments of ascertained and definite amounts") was legal rather than equitable.

*Id.* at 42.  Since the trustee was seeking only return of the money, this was the equivalent to an

action for damages, the classic legal remedy.

At the core of the Plaintiff/Trustee's Complaint in the case *sub judice* is a request for

money damages, a classic legal remedy.  Although Blixseth may be entitled to a jury trial, under

28 U.S.C. § 157(e), this Court, absent consent of the parties not present here, may not conduct

the jury trial on the Trustee's claims against Blixseth even though the District Court has

designated the Bankruptcy Court to exercise such jurisdiction by Standing Order 12.

On January 26, 2010, the Honorable Richard F. Cebull entered an Order denying

Blixseth's motion to withdraw the reference in this proceeding as premature, reasoning that this

Court is permitted to retain jurisdiction over the action for pretrial matters.  *Sigma Micro Corp. v.*

*Healthcentral.com (In re Healthcentral.com)*, 504 F.3d 775 (9ᵗʰ Cir. 2007).  In other words, this

Court has jurisdiction to determine all pretrial matters in this Adversary Proceeding, irrespective

of any of the parties' right to a jury trial.  Judge Cebull indicated in his Order dated January 26,

2010, that "judicial efficiency would be served by the pre-trial management of this case

remaining with the Bankruptcy Court."  For the reasons discussed herein, the Court will enter a

Created by Neevia Document Converter trial version http://www.neevia.com

separate order providing as follows:

IT IS ORDERED that the Plaintiff/Trustee's Motion for Determination of Core

Proceeding filed November 24, 2009, at docket entry no. 56, is GRANTED, in part and

DENIED, in part; and this Court hereby determines that Count I of the Plaintiff/Trustee's

Complaint is a core proceeding under 28 U.S.C. § 157(b), while Count II is a non-core

proceeding that is related to this bankruptcy proceeding.

IT IS FURTHER ORDERED that this Court will retain jurisdiction over this Adversary

Proceeding for all pre-trial matters.

IT IS FURTHER ORDERED and NOTICE IS HEREBY GIVEN that a Pretrial

scheduling conference shall be held telephonically on **Wednesday, February 17, 2010, at 1:45**

**p.m.**   Prior to the hearing, litigants shall provide the Court with the telephone number where the

litigants can be reached on the date and time of the above scheduled hearing by contacting

Deputy Clerk of Court Lynn Myers at lynn_myers@mtb.uscourts.gov or (406) 497-1252.


BY THE COURT


HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

12

Created by Neevia Document Converter trial version http://www.neevia.com