UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

| | |
|---|---|
| In re<br><br>**BIG SPRINGS REALTY LLC**,<br><br>　　　　　Debtor. | Case No. **09-61079-7** |
| **DARCY M. CRUM**,<br><br>　　　　　Plaintiff.<br><br>-vs-<br><br>**TIMOTHY L BLIXSETH**,<br><br>　　　　　Defendant. | Adv No. **09-00065** |

## MEMORANDUM of DECISION

At Butte in said District this 28th day of May, 2010.

In this Adversary Proceeding, after due notice, a hearing was held May 11, 2010, in Butte on: (1) the Plaintiff Darcy M. Crum's ("Crum") Motion to Strike Defendant's Jury Demand filed March 2, 2010, at docket entry no. 147; (2) Defendant Timothy L. Blixseth's ("Blixseth") Motion for Reconsideration filed March 23, 2010, at docket entry no. 157; and (3) Blixseth's Motion for Leave to File a First Amended Answer filed April 1, 2010, at docket entry no. 160.  Trent M. Gardner of Bozeman, Montana appeared at the hearing on behalf of Crum and Daniel D. Manson of Butte, Montana appeared on behalf of Blixseth.  The Court heard argument from counsel, but no witness testimony was presented and no exhibits were offered into evidence.

1

1.      Crum's Motion to Strike Defendant's Jury Demand.

In the Motion to Strike Defendant's Jury Demand, Crum seeks an order striking Blixseth's jury demand. Crum also requests that the trial in this matter be conducted as a judge trial before the Bankruptcy Court with the undersigned presiding. Crum contends that the nature of Blixseth's affirmative defenses subjects him to the equitable jurisdiction of this Court because Blixseth is asserting a claim against the bankruptcy estate. Specifically, Crum cites to the following affirmative defenses contained in Blixseth's Answer filed October 28, 2009, at docket entry no. 26:

**SEVENTH AFFIRMATIVE DEFENSE**

> Plaintiff's recovery, if any, on the Complaint and each and every cause of action therein is limited or barred by contractual provisions and indemnity provisions of the BSR Operating Agreement and Montana State Law.

* * *

**NINTH AFFIRMATIVE DEFENSE**

> Without conceding that any act of this defendant caused damage to plaintiff, or any other person in any respect, defendant alleges that he is entitled to setoff and recoup against any judgment that may be entered.

**TENTH AFFIRMATIVE DEFENSE**

> Defendant is entitled to equitable and contractual indemnification from BSR and its successor Manager for any alleged damages, which damages, if any, were caused solely by the independent acts of those parties.

Crum argues that the definition of setoff necessarily requires that Blixseth, in order to assert such affirmative defense, have a claim against the Debtor's estate:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case

>  under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . .

11 U.S.C. § 553(a). Relying on *In re Commercial Fin. Services Inc. v. Jones (In re Commercial Fin. Services, Inc.)*, 251 B.R. 397 (Bankr. N.D.Okla. 2000), Crum argues that by asserting affirmative defenses 7, 9 and 10, Blixseth has subjected himself to the jurisdiction of the Bankruptcy Court for all purposes and has waived his right to a jury trial.

Blixseth counters that Crum is stretching the plain intent of Blixseth's affirmative defenses and that an examination of the actual substance of his affirmative defenses will show that Blixseth has not asserted a claim against the bankruptcy estate. Blixseth argues that he has not waived his right to a jury trial because he is not seeking an affirmative recovery from the Debtor's estate through his contractual and equitable defenses. More specifically, Blixseth argues that this case is analogous to *Gecker v. Marathon Fin. Ins. Co., Inc. (In re Auto. Professionals, Inc.)*, 389 B.R. 621, 630 (N. D. Ill 2008), wherein the court concluded that the defendant did not waive its right to a jury trial by asserting a contractual defense, and in *Riley v. Wolverine, Proctor & Schwartz, LLC (In re Wolverine, Proctor & Schwartz, LLC)*, 404 B.R. 1 (D. Mass. 2009), wherein the court found that the defendants did not submit themselves to the equitable jurisdiction of the bankruptcy court by asserting an indemnification/recoupment defense.

Crum and Blixseth agree that a party who has not submitted a claim against a debtor's bankruptcy estate has not submitted him or herself to the equitable jurisdiction of the Bankruptcy Court and thus retains the right to a jury demand. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989). However, a party waives their right to a jury demand

when they file a claim against a bankruptcy estate. *See Langenkamp v. Culp*, 498 U.S. 42, 44-45, 111 S.Ct. 330, 331 - 332 (1990).

As noted above, Crum relies almost exclusively on *Commercial Fin. Services*, in support of her motion to strike Blixseth's jury demand. In *Commercial Fin. Services*, the debtor filed a complaint for turnover of property and other relief against the defendant seeking payment on a demand note. 251 B.R. at 400. The defendant moved to withdraw the reference arguing that because he had not filed a proof of claim, he had not submitted himself to the jurisdiction of the bankruptcy court and was entitled to a jury trial before the district court. The court in *Commercial Fin. Services* disagreed because the defendant had also filed an answer to the debtor's complaint, which answer included an affirmative defense asserting that the defendant "may be owed money by CFS which may be set-off or recouped against any amount that he may owe to CFS." *Id.*

The court in *Commercial Fin. Services* concluded that "the assertion of setoff, whether as a defense or as a counterclaim, clearly invokes the claims allowance process." 251 B.R. at 406. The court rejected the defendant's argument that by asserting setoff as a defense it was not actually seeking to recover from the estate but merely seeking to reduce the amount it would have to pay to the estate, explaining:

> This Court fails to see a distinction between obtaining something of value from the estate by filing a claim and obtaining something of value from the estate, i.e., discharge of all or a portion of a debt to [the debtor] by asserting setoff as a defense. In both cases, the estate may be diminished and [the creditor] may be enriched.

*Id*. at 407; *see also Hedstrom Corp. v. Wal-Mart Stores, Inc. (In re Hedstrom Corp.),* 2006 WL 1120572, at *3 (N.D.Ill. Apr.24, 2006) (reasoning that "[w]hether [the debtor] writes [the

4

creditor] a check or cancels [its] receivable, the end result is the same: the bankruptcy estate will be significantly diminished"); *Stoebner v. Leonard, O'Brien, Wilford, Spencer & Gale, Ltd. (In re O'Neill)*, 1997 WL 615661, *3 (Bankr. D.Minn. Oct. 2, 1997) (noting that a creditor who is entitled to set off the amount of its claims against the amount it owes to a debtor "has effectively received full payment on its claims instead of being limited to the amount of the Trustee's pro rata distribution"). The court in *Commercial Fin. Services* reasoned:

> Not only is Jones asserting a claim, his claim is treated as a secured claim, resulting in his claim, if proven and allowed, being satisfied in full, and in real dollars as opposed to "tiny bankruptcy dollars," to the extent that CFS recovers against him. *See, e.g., Lee v. Schweiker*, 739 F.2d 870, 875 (3d Cir.1984) ("In bankruptcy, setoff and recoupment play a role very different from their original role as rules of pleading. Setoff, in effect, elevates an unsecured claim to secured status to the extent that the debtor has a mutual, pre-petition claim against the creditor. Setoff is limited, however, by the provisions of 11 U.S.C. § 553.").

251 B.R. at 405-06 (footnote omitted).

In opposition, Blixseth argues that several cases, including *Container Recycling Alliance v. Lassman*, 359 B.R. 358 (D. Mass 2007) and *Auto. Professionals*, 389 B.R. 621, "specifically reject the reasoning of *In re Commercial Fin. Servs*." After a careful review of *Container Recycling Alliance* and *Automotive Professionals*, this Court finds that *Container Recycling Alliance* and *Automotive Professionals* do not "specifically reject" *Commercial Fin. Servs*., but rather, support Crum's position, and not Blixseth's.

In *Container Recycling Alliance*, a Chapter 7 trustee commenced an adversary proceeding against Container Recycling Alliance alleging breach of contract, indemnification and breach of the implied covenant of good faith and fair dealing. Container Recycling Alliance responded to the trustee's complaint with an answer that contained numerous affirmative defenses and three

5

counterclaims, two of which included breach of contact claims.  Container Recycling Alliance then moved to withdraw the reference.  In deciding the withdrawal of reference motion, the district court concluded that Container Recycling Alliance had muddied the water by its "infelicitous" use of the term "setoff," because the facts supported a claim of "recoupment" as opposed to a claim of  setoff.  *Container Recycling Alliance*, 359 B.R. at 363.  The district court explained that recoupment is "a reduction or rebate by the defendant of part of the plaintiff's claim because of a right in the defendant arising out of the same transaction" while setoff is a "counter-claim demand which defendant holds against plaintiff, arising out of a transaction extrinsic to plaintiff's cause of action." *Id.*, citing *United Structures of Am., Inc. v. G.R.G. Eng'g, S.E*, 9 F.3d 996, 998-99 (1st Cir. 1993).  As the court in *Container Recycling Alliance* explained, just because a party "uses the incorrect technical terms for the means available to achieve that substantive end ought not be determinative of the parties' rights." 359 B.R. at 364.  Because the claims in *Container Recycling Alliance* arose out of the same transaction--a commercial lease agreement--and because Container Recycling Alliance disclaimed any affirmative recovery, the court viewed the asserted defense as that of recoupment.  Thus, the court concluded:

> [W]here  the defendant in an adversary action initiated by a bankruptcy trustee has not filed a proof of claim but asserts claims for recoupment once sued, the defendant does not seek an affirmative recovery from the estate, but rather a fair accounting of the amount the estate is entitled to based on the resolution of a single, disputed, underlying transaction. The defendant is not asserting a claim against the debtor's estate as contemplated in either *Granfinanciera* or *Langenkamp*, and thus the defendant's right to a jury trial is unaffected.

*Container Recycling Alliance*, 359 B.R. at 365.

Contrary to what Blixseth suggests, the judge in *Container Recycling Alliance* only

disagreed with *Commercial Fin. Services* to the extent that it considered any defense to a trustee's adversary action as invoking the claims allowance and disallowance process: "A claim made by the trustee that has no merit and ought in justice be defeated should not be considered to hold any value for the estate." *Container Recycling Alliance,* 359 B.R. at 364-65, n.6.

As discussed in *Container Recycling Alliance*, numerous courts have focused on whether a claim, and in particular, a counterclaim is compulsory or permissive. 359 B.R. at 361-62. However, [r]egardless of the ultimate characterization of the counterclaim, . . . the courts' chief concern has been whether the counterclaimant was seeking to achieve an affirmative recovery from the estate by circumventing the bankruptcy court's formal claims allowance procedure." 359 B.R. at 362. The same focus holds true when dealing with a counterclaim versus a defense. As persuasively explained in *Commercial Fin. Services*, "[t]he distinction between asserting setoff as a defense and asserting setoff as a claim is one without a difference insofar as the evidence required to be presented to prove the defendant's alleged right to setoff (proof of a prepetition valid and enforceable claim against the estate) and the prerequisites that must be satisfied to permit setoff against a claim of the estate ( i.e., that the defendant's claim is not disallowed)." *Commercial Fin. Services*, 251 B.R. at 406-07. Clearly, by asserting setoff as a defense, Blixseth is seeking to restructure the debtor-creditor relationship between himself and the Debtor by asserting a claim against the Debtor and Debtor's bankruptcy estate. Blixseth's setoff defense in this case is akin to an informal proof of claim and if successful, would directly impact the administration of the Debtor's bankruptcy estate.

Similarly, the bankruptcy judge in *Automotive Professionals* did not disagree with *Commercial Fin. Serv.*, but instead agreed that courts need to "look past the technical title of a

7

defense . . . and instead focus on the actual substance of the pleading to determine whether it is a claim against the bankruptcy estate." *Automotive Professionals*, 389 B.R. at 629-30. In doing such, in accordance with Rule 8(c) of the Federal Rules of Civil Procedure, the court concluded that the defendant had improperly labeled its defense as "contribution" because the defendant was not claiming that it had to pay more than its share of liability to a third party. Rather, the defendant in *Automotive Professionals* was merely asserting that it should not have to pay out any funds on vehicle service contracts until after the debtor depleted the funds it had on deposit in various reserve accounts. The Court agreed that a claim for contribution would trigger the claims allowance process. However, where the defendant was not seeking any recovery from the debtor's estate, but was merely asserting a defense, the court concluded that the claims allowance process was not triggered and the defendant had not waived its right to a jury trial.

A similar ruling was reached in *Wolverine, Proctor & Schwartz*, where the court found that the defendants had not waived their right to a jury trial by asserting an indemnification defense that was in the nature of recoupment. 404 B.R. at 4. The court in *Wolverine* reasoned that because the defendants had "expressly disavowed and waived any affirmative recovery from the estate" that the indemnification defense was "effectively only an assertion of a right of recoupment, not setoff, and [did] not amount to an invocation of the claims allowance process." *Id.*

Finally, Blixseth urges the Court to follow the reasoning and ruling set forth in *Styler v. Jean Bob (In re Concept Clubs, Inc.)*, 154 B.R. 581 (D. Utah 1993). The court in *Concept Clubs* rejected the "parties efforts to characterize setoff merely as an affirmative defense, or counterclaim," and instead focused on whether a creditor, through setoff, was seeking an

affirmative recovery from a bankruptcy estate, which invokes the bankruptcy court's equitable powers, or whether the creditor was merely seeking to reduce or extinguish the amount sought by the trustee.  *Concept Clubs*, 154 B.R. at 589.  The court in *Concept Clubs* concluded that:

> [A]n action for setoff raised as a counterclaim seeking affirmative relief necessarily submits the claimant to the equitable jurisdiction of the bankruptcy court, thereby waiving the Seventh Amendment right to a jury trial. By contrast, when setoff is raised only as an affirmative defense seeking to reduce, or extinguish, the original claim, the party asserting the claim does not invoke the bankruptcy court's equitable jurisdiction and retains the right to a jury trial.

*Id.*

Other than the conclusion that setoff as a defense does not involve the claims allowance process, the Court in *Commercial Fin. Services* found the analysis in *Concept Clubs* compelling. 251 B.R. at 406, n.10.  This Court agrees.

Blixseth argues on page 4 of his brief that "if accepted by the court," his affirmative defenses would only "bar the Trustee's claims, or adjust the amount of the Trustee's legally permissible recovery."  The Court disagrees.  Blixseth's affirmative defenses were drafted in such an artfully skeletal fashion that this Court cannot conclude that Blixseth's affirmative defenses relate solely to the transactions raised by Crum in her Complaint.  Indeed, given what the Court has learned in this case and other associated cases over the past one and one-half years, the Court finds that Blixseth's affirmative defenses are an attempt to assert independent, affirmative claims against the Debtor and Debtor's bankruptcy estate.

Following the sound reasoning discussed in *Wolverine, Proctor & Schwartz*, 404 B.R. 1, *Automotive Professionals, Inc.*, 389 B.R. 621, *In re EZ Pay Services, Inc.*, 389 B.R. 278 (Bankr. M.D. Fla. 2008), *Container Recycling Alliance*, 359 B.R. 358, and *In re Commercial Fin.*

9

*Services, Inc.*, 251 B.R. 397, the Court finds that even though Blixseth has not filed a formal proof of claim in this case, Blixseth has nevertheless, through his affirmative defenses of setoff and equitable and contractual indemnification from Debtor and its successor Manager, sought more than a fair accounting of the amount that Crum is entitled to under her claims against Blixseth. Blixseth, by asserting his affirmative defenses, has submitted himself to the equitable jurisdiction of this Court and thus lost his right to a jury trial.

      2.      Blixseth's Motion for Reconsideration.

In the Motion for Reconsideration, Blixseth, pursuant to Mont. LBR 9013-1(k) and Fed.R.Civ.P. 60(b)(1), (2) and (6), seeks reconsideration of the Court's March 18, 2010, Memorandum of Decision (dkt no. 154) and Order (dkt no. 155) granting Plaintiff's Motion for Preliminary Injunction, wherein this Court found that Blixseth had disposed of certain municipal bonds held in an account at D.A. Davidson. Blixseth argues that the issue of the municipal bonds was not raised in the briefing on Plaintiff's Motion for Preliminary Injunction (dkt nos. 49 and 91), nor was any evidence admitted at the hearing on Plaintiff's Motion for Preliminary Injunction regarding the alleged disappearance of any municipal bonds from the D.A. Davidson account. Thus, Blixseth asserts that no evidence exists in the record on Plaintiff's Motion for Preliminary Injunction to support the conclusion that Blixseth disposed of any of the municipal bonds. In addition, Blixseth argues that he sent Crum's counsel an email on February 18, 2010, explaining that the municipal bonds were removed from Blixseth's account statement because D.A. Davidson's outside pricing service discontinued the pricing of auction rate securities.

Crum urges the Court to reject Blixseth's request, arguing that Blixseth's Motion for Reconsideration is focused on one minor piece of evidence related to one element of obtaining a

preliminary injunction. Crum argues that even without the challenged evidence, the Court had ample evidence before it of the potential for irreparable harm.

Rule 60, Fed.R.Civ.P., incorporated into the Federal Rules of Bankruptcy Procedure by Rule 9024[1], provides relief for such items as mistake, inadvertence, excusable neglect, newly discovered evidence and fraud. The provisions of Rule 60(b) set forth in subsections (2) through (5) are by their plain terms, not applicable to this proceeding. Contrary to Blixseth's argument, Blixseth has not come forth with any newly discovered evidence that would impact the Court's March 18, 2010, Memorandum of Decision and Order. Moreover, Blixseth does not maintain that the decision was procured by fraud, misrepresentation or misconduct; that the decision is void; or that the Memorandum of Decision and Order have been satisfied or were based on an order that has been reversed or otherwise vacated. Thus, the only applicable provisions are Rule 60(b)(1) and (6).

Under Rule 60(b)(1), a court may relieve a party from a final judgment for mistake, inadvertence, surprise, or excusable neglect. What is or is not sufficient to justify relief under Rule 60(b)(1) is best understood by analyzing fact patterns arising in case law. The following are

---

[1] Rule 60(b) provides:

**Grounds for Relief from a Final Judgment, Order, or Proceeding.** On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or other misconduct of an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or otherwise vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

11

examples of fact patterns that warrant relief under Rule 60(b)(1):

> - The records shows that one of the parties proceeded to trial under an understandable but mistaken assumption concerning the issues to be tried;
>
> - Settlement was made by an attorney who lacked authority;
>
> - An appeal was not timely because clerk errors contributed to appellant's lack of notice that final judgment had been entered;
>
> - An ambiguous local rule misleads a party as to the time required to act in order to secure trial on the merits;
>
> - Ignorance of unfamiliar local procedures may be excused when additional facts and circumstances contribute to the ignorance; and
>
> - Failure to appear at trial may be excused when court created confusion in process of setting trial date.

12-60 MOORE'S FEDERAL PRACTICE-CIVIL § 60.41[1][b] (2009).

Blixseth contends that the Court was mistaken in considering pleadings outside Crum's Application for Prejudgment Writ of Attachment and that Blixseth mistakenly believed that any discrepancy concerning the D.A. Davidson account was satisfactorily resolved between the parties. Crum asserted in her application for prejudgment writ of attachment that the application was supported by the exhibits attached to Plaintiff's Application, the Affidavit of Darcy Crum and the exhibits thereto, and the entire record in the case. Blixseth's D.A. Davidson account statements were in the record, and thus, it was incumbent upon Blixseth to correct the record prior to March 18, 2010, if he believed any aspect of the record was in error, including his D.A. Davidson account statements. The Court declines to grant Blixseth's motion under Rule 60(b)(1).

Next, the Ninth Circuit Court of Appeals teaches that Rule 60(b)(6):

> [D]oes not particularize the factors that justify relief, but we have previously noted that it provides courts with authority "adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice," *Klapprott v. United States*, 335 U.S. 601, 614-15, 69 S.Ct. 384, 390, 93 L.Ed. 266 (1949), while also cautioning that it should only be applied in "extraordinary circumstances," *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950). *Liljeberg v. Health Servs. Acquisition Corp*., 486 U.S. 847, 863-64, 108 S.Ct. 2194, 2204, 100 L.Ed.2d 855 (1988).
>
> Following the admonitions of the Supreme Court, we have used Rule 60(b)(6) "sparingly as an equitable remedy to prevent manifest injustice." *United States v. Alpine Land & Reservoir* Co., 984 F.2d 1047, 1049 (9th Cir.), *cert. denied*, 510 U.S. 813, 114 S.Ct. 60, 126 L.Ed.2d 29 (1993). "The rule is to be utilized only where extraordinary circumstances prevented a party from taking timely action to prevent or correct an erroneous judgment." *Id.*

*United States v. State of Washington, et al.*, 98 F.3d 1159, 1163 (9th Cir. 1996).

The issue concerning the disappearance of funds from Blixseth's D. A. Davidson account was not critical to the Court's March 18, 2010, decision. The Court's ruling would be the same, irrespective of the discussion concerning the D.A. Davidson account. Therefore, because relief under Rule 60(b) is an extraordinary remedy that should be used sparingly, the Court exercises its discretion to deny Blixseth's request for reconsideration under Rule 60(b)(6).

3.    Blixseth's Motion for Leave to File a First Amended Answer.

Pursuant to Fed.R.Civ.P. 15(a), Blixseth requests leave of the Court to amend his Answer to include five additional affirmative defenses. In response to a prior motion to amend involving Blixseth in a separate adversary proceeding, this Court agreed with Blixseth that in the Ninth Circuit, a request for leave to amend made after the entry of a Rule 16 Scheduling Order is governed primarily by Rule 16(b). *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608-09 (9th Cir.1992). The Scheduling Order in this case was entered February 18, 2010. Thus, Blixseth's pending Motion is governed by Rule 16(b).

13

Pursuant to Rule 16(b), a scheduling order "shall not be modified except upon a showing of good cause and by leave of the district judge. . . ." Fed.R.Civ.P. 16(b).  In this case, Blixseth's motion to amend is consistent with the February 18, 2010, scheduling order, which directed that all amendments to pleadings be filed on or before April 1, 2010.  Because Blixseth's request to amend was timely filed under the scheduling order, the Court finds that Blixseth need not show good cause under Rule 16(b), but must nevertheless demonstrate that amendment is proper under Rule 15.  *Johnson*, 975 F.2d at 608; F.R.Civ.P. 15, 16(b).  Rule 15(a) provides that leave to amend "shall be freely given when justice so requires." F.R.Civ.P. 15(a).  In the absence of an "apparent reason," such as undue delay, bad faith, dilatory motive, prejudice to defendants, futility of the amendments, or repeated failure to cure deficiencies in the Complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 538 (9th Cir.1989).  Consideration of prejudice to the opposing party "carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir.2003).  Given the liberal standards mandated by Rule 15, "the nonmovant bears the burden of showing why amendment should not be granted."  *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed.Cir.1986).

In this case, Crum opposes Blixseth's request to amend, arguing that if Blixseth is allowed to amend his answer as contemplated, that Blixseth will waive his attorney-client privilege.  Blixseth has already asserted the advice of counsel defense in other proceedings, and waived his attorney-client privilege as to those matters.  Consistent with that waiver, the Court is not surprised that Blixseth would assert an advice of counsel defense in this proceeding.

Trial in this matter is not scheduled to commence for almost three months and given this Court's schedule and the fact that Blixseth has waived his right to a jury trial, trial in this matter will, in all likelihood, be delayed. Given the potential for delay, coupled with Crum's ability to re-depose Blixseth, the Court finds that Crum will not be prejudiced by Blixseth's proposed amendment. Accordingly, Blixseth's Motion for Leave to File a First Amended Answer is granted.

In accordance with the foregoing, the Court will enter a separate order providing as follows:

IT IS ORDERED that Plaintiff Darcy M. Crum's Motion to Strike Defendant's Jury Demand filed March 2, 2010, at docket entry no. 147, is GRANTED; (2) Defendant Timothy L. Blixseth's Motion for Reconsideration filed March 23, 2010, at docket entry no. 157, is DENIED; and (3) Defendant Timothy L. Blixseth's Motion for Leave to File a First Amended Answer filed April 1, 2010, at docket entry no. 160, is GRANTED.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana